Matter of Melissa MM. v Melody NN. (2019 NY Slip Op 01463)





Matter of Melissa MM. v Melody NN.


2019 NY Slip Op 01463


Decided on February 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 28, 2019

526299

[*1]In the Matter of MELISSA MM., Appellant,
v
MELODY NN. et al., Respondents. (And Another Related Proceeding.)

Calendar Date: January 8, 2019

Before: Lynch, J.P., Mulvey, Devine, Aarons and Pritzker, JJ.


Lisa A. Burgess, Indian Lake, for appellant.
Reginald H. Bedell, Willsboro, attorney for the child.



MEMORANDUM AND ORDER
Lynch, J.P.
Appeal from an order of the Family Court of Clinton County (Favreau, J.), entered November 30, 2017, which, among other things, partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) is the mother of a child (born in 2004). The child's father died in 2014. Respondent Melody NN. (hereinafter the aunt) is the mother's sister and is married to respondent Brian NN. (hereinafter the uncle). The family has required or requested Family Court intervention since 2007, when the mother consented to a finding that she neglected the child and the child was placed in respondents' custody. Since that time, several orders were issued to adjust the custodial arrangement by changing, expanding or reducing the mother's parenting time. In August 2015, Family Court issued a custody order on consent that awarded the mother and respondents joint legal custody of the child, physical custody of the child to respondents and defined parenting time to the mother.
In April 2017, the mother filed the instant modification petition seeking full custody of the child. Shortly thereafter, the aunt filed a cross petition seeking an order directing that all parenting time between the mother and the child be supervised. After fact-finding and Lincoln hearings, Family Court awarded the mother and the aunt joint legal custody of the child and the aunt primary physical custody of the child [FN1]. The court dismissed the aunt's cross petition. The mother now appeals, claiming that the court erred in awarding the aunt primary physical custody of the child.
In this custody proceeding between a parent and nonparent, the mother "has a claim of custody of [the] child, superior to that of [the aunt], in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (Matter of Hall v Moore, 159 AD3d 1069, 1070 [2018] [internal quotation marks, ellipsis and citations omitted]; see Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]; Matter of Christy T. v Diana T., 156 AD3d 1159, 1160 [2017]). Here, the mother's petition sought modification of a prior consent order, which "does not constitute a judicial finding [or an admission] of surrender, abandonment, unfitness, neglect or other extraordinary circumstances" (Matter of Christy T. v Diana T., 156 AD3d at 1160 [internal quotation marks and citation omitted]; see Matter of Rush v Roscoe, 99 AD3d 1053, 1054 [2012]). As such, the mother was not obligated to show a change in circumstances (see Matter of Christy T. v Diana T., 156 AD3d at 1160; Matter of McBride v Springsteen-El, 106 AD3d 1402, 1403-1404 [2013]).
Although Family Court did not make a finding of extraordinary circumstances, we have the authority to independently review the record to determine this threshold issue (see Matter of Tamika B. v Pamela C., 151 AD3d 1220, 1221 [2017]; Matter of Rush v Roscoe, 99 AD3d 1053, 1054 [2012]; Matter of Ramos v Ramos, 75 AD3d 1008, 1010 [2010]). "A determination of whether extraordinary circumstances exist takes into consideration such factors as the length of time the child has resided with the nonparent, the quality of the child's relationships with the parent and the nonparent, the prior disruption of the parent's custody, separation from siblings and any neglect or abdication of responsibilities by the parent" (Matter of Lina Y. v Audra Z., 132 AD3d 1086, 1087 [2015] [internal quotation marks and citations omitted]).
In 2007, the mother consented to a finding that she neglected the child. Since then, the child has resided with the aunt, while the mother has been permitted defined parenting time that was supervised until July 2010. As Family Court observed, the ensuing years have been incredibly litigious and stressful for the child, the mother and the aunt due to the clearly dysfunctional relationship between the mother and the aunt. The mother, who has been treated for mental health issues in the past, denied any current need for treatment. She did obtain treatment for the child prior to filing the instant petition, but her testimony otherwise revealed that she was largely unaware of the nature and purpose of services that the child was receiving at school.
The record evinces that the mother has endeavored to stabilize her life. She works part time, has remarried, had a second child and moved into a new residence where the subject child would have his own room. It was undisputed, however, that the child was "challenging," that the mother often had a difficult time parenting the child and that she would terminate her parenting time early as a result. On this issue, the mother attributed much of the blame to the child and his mental health issues, but had little insight as to her own responsibility as the adult parent to deescalate situations with the child. We find that, based on the "cumulative effect" of the evidence and upon our review of the Lincoln hearing, the aunt met her burden of establishing extraordinary circumstances (Matter of Roth v Messina, 116 AD3d 1257, 1260 [2014]; see Matter of Battisti v Battisti, 121 AD3d 1196, 1198 [2014]).
Next, we find that Family Court properly determined that the child's best interests would be served by awarding the aunt primary physical placement of the child. The factors relevant to determining a child's best interests include "maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Battisti v Battisti, 121 AD3d at 1198 [internal quotation marks, brackets and citations omitted]). The aunt has served as the child's primary caretaker for nearly his entire life. We have no doubt that the mother loves the child and are hopeful that she will continue to work towards developing a stable relationship with him. The record supports Family Court's assessment, however, that there is room for "significant[] improve[ment]" in their relationship. Though not determinative, Family Court's determination was consistent with the position advocated by the attorney for the child (see Matter [*2]of Debra SS. v Brian TT., 163 AD3d 1199, 1203 [2018]). When we give the requisite deference to the court's credibility determinations, we find that there is sound and substantial basis in the record to support Family Court's determination (see Matter of Battisti v Battisti, 121 AD3d at 1198).
Mulvey, Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Family Court granted only that part of the mother's petition as sought removal of the uncle as a joint custodian because the aunt and the uncle had divorced. It otherwise dismissed the mother's petition.